SEELY OFFICE APPLIANCE CO. v. ENCYCLOPÆDIA BRITTANNICA CO.

(Supreme Court, Appellate Term.  November 12, 1909.)

1. PRINCIPAL AND AGENT (§ 103*)—IMPLIED AUTHORITY OF EMPLOYÉ—PURCHASE OF GOODS—DELIVERY TO ANOTHER.

Apparent authority of an employé to bind the employer, by ordering goods to be delivered to another employé, cannot be inferred from the fact that the employé ordering the goods had previously ordered small

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

supplies to be delivered to the employer; such fact implying, at most, authority to order goods to be delivered to the employer.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 278; Dec. Dig. § 103.*]

2. PRINCIPAL AND AGENT (§ 123*)—IMPLIED AUTHORITY—AUTHORITY TO PURCHASE—EVIDENCE.

That an employé used an instrument delivered to him in doing work for his employer is not evidence that the instrument was purchased for the employer, or of authority from the employer to purchase it.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 426; Dec. Dig. § 123.*]

3. CORPORATIONS (§ 402*)—ACTS OF MANAGER—USE OF INDIVIDUAL NAME.

Letters written on defendant corporation's letter heads, but signed by its manager, requesting plaintiff to transcribe phonographic records previously delivered to such manager at the request of another employé of defendant, were mere personal orders of the manager, and did not bind defendant.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1739; Dec. Dig. § 402.*]

4. CORPORATIONS (§ 425*)—AGENCY TO PURCHASE—ADMISSION BY CORPORATION.

Where plaintiff delivered goods to H., manager of defendant, the E. B. Co., by direction of the C. M. Co., who originally received the order, and turned it over to plaintiff, and informed him that H. was the practical owner of defendant company, the fact that defendant never disputed a bill sent to it for the price of the goods until H. left its employ, was not an admission that the goods were purchased by its authority.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1700; Dec. Dig. § 425.*]

5. SALES (§ 52*)—PARTIES TO CONTRACT—SUFFICIENCY OF EVIDENCE—IDENTITY OF BUYER.

In an action for the value of goods delivered to defendant's manager, upon an order therefor by another employé, to another company, who turned the order over to plaintiff, evidence *held* to show that neither plaintiff nor the company originally receiving the order thought that defendant had agreed to pay for the goods, but gave credit to the manager, believing him to be the real owner of the business.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 138; Dec. Dig. § 52.*]

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by the Seely Office Appliance Company against the Encyclopædia Brittannica Company. From a judgment for plaintiff, defendant appeals. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and SEABURY and LEHMAN, JJ.

Mark H. Ellison, for appellant.
Newton McGovern, for respondent.

LEHMAN, J. The plaintiff in its complaint alleges that it bargained and sold to the defendant, and delivered to one H. R. Haxton, at the request of the defendant, one Edison business phonograph outfit, of the agreed price and reasonable value of $91.75. If the testimony of the plaintiff is true, and was correctly admitted over the defendant's objections, then the plaintiff has shown that the Cortina Music Com-

pany, a corporation that had previously done business with the defendant, was called to the telephone by a Mr. Taylor, who was employed in the office of the defendant, and had previously given orders to the Cortina Company for goods that had been delivered to and paid for by the defendant company, and Mr. Taylor then said, "Encyclopædia Brittannica Company, Mr. Taylor speaking," and gave an order for a business phonograph to be delivered at the Hotel Belmont to Mr. H. R. Haxton. It appears that Mr. Haxton was the defendant's advertising manager. As the Cortina Company did not handle these goods, it turned over the order to the plaintiff.

Obviously, in the absence of proof that Taylor had real authority to bind the defendant, no apparent authority can be implied to order goods to be delivered to another employé of the company from the fact that he had previously been allowed to order small supplies to be delivered to the company. If a business house can be held upon such evidence of authority, then no business man will have the slightest protection against a conspiracy of two of his employés. At least a delivery to the company must be shown in such a case. Here, however, it appears that the goods were delivered to Haxton, first at the Hotel Belmont, and then at his country residence at Katonah; and the only evidence that they were delivered to him on behalf of the defendant is that he subsequently sent a few records from the phonograph to be transcribed by the plaintiff, and the plaintiff says that these records were apparently records dealing with the defendant's business. Even if this is true, the fact that an agent used this instrument in doing his work for his employer is no evidence that the instrument was purchased for the defendant.

The plaintiff also claims that these records were sent to it, with letters from the defendant, requesting it to transcribe them. An examination of these letters shows that, while they were written on defendant's letter heads, they are written in the first person, and signed, "H. R. Haxton, by J. D. T." They were apparently not intended to be the orders of the defendant, and no fair interpretation can make them anything but personal orders of Haxton.

The plaintiff also claims that it sent bills to the defendant for these goods, and the defendant never disputed them until Haxton left defendant's employ. If, under any circumstances, this could constitute an admission against the defendant, it certainly could not in this case, because the plaintiff's witness subsequently testified that these bills were really sent to "Harry R. Haxton, Encyclopædia Brittannica Co.," because he was informed by the Cortina Music Company that Mr. Haxton was the practical owner of the defendant.

It seems to me that, not only has the plaintiff failed to prove that the defendant ever authorized any agreement to pay for these goods, but the plaintiff has affirmatively proven that neither it nor the Cortina Music Company ever thought that the defendant had agreed to pay for either the instruments or the transcribing of the records, but gave credit to Haxton, believing that he was the real owner of the defendant company.

The judgment should be reversed, and new trial ordered, with costs to appellant to abide the event. All concur.